**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DENNIS M. WOLFEL,**                         **CASE NO. 2:07-cv-1079**
                                              **JUDGE FROST**
     **Petitioner,**                    **MAGISTRATE JUDGE KEMP**

**v.**

**DEB TIMMERMAN-COOPER, et al.,**

     **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, petitioner's request for summary judgment, respondent's response in opposition, petitioner's reply and supplemental memorandum in support, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** and that petitioner's motion for summary judgment, Doc. No. 18, be denied. His request for an evidentiary hearing, Doc. No. 19, is **DENIED.**

### PROCEDURAL HISTORY

While released on parole for his 1969 burglary conviction, *see Exhibits 1-3 to Return of Writ,*[1] petitioner was indicted by the Franklin County grand jury on charges of rape and kidnapping. *Exhibit 12 to Return of Writ.* The Ohio Tenth District Court of Appeals

---

[1] Petitioner was sentenced to one to fifteen years incarceration on his burglary conviction. *See Exhibits 2-3 to Return of Writ.*

summarized the facts of the petitioner's underlying convictions as follows:

The record indicates that on the evening of February 7, 1976, between the hours of 10:00 and 10:10 p.m., a man identifying himself as Mr. Tom Valenti, which name was later found to be an alias used by the defendant in this case, Dennis M. Wolfel, called the Medical Personnel Pool and requested a nurse or nurse's aide to take care of his invalid mother, described as 62 years old and a stroke victim. He requested assistance for a period of time between 11:00 p.m. that night until 7:00 a.m. the following morning. Mrs. Knoke who took the call testified she went through the Medical Personnel Pool files from A to R calling approximately 25 different employees before contacting the victim, Miss Roxanne Ronovitch, who resided in a law school rooming house located at 70 East Twelfth Avenue in Columbus, and was a full-time student at Ohio State University and also worked as a part-time nurse's aide for the Medical Personnel Pool.

Miss Ronovitch testified that she received a phone call from Mrs. Knoke and agreed to take the assignment; that she took a cab to 1372 Northridge Road arriving at approximately 11:00 p.m.; that she went to the door, knocked several times, then opened the door and stood by the doorway; that a man whom she identified as the defendant came from the kitchen and identified himself as Tom Valenti who escorted her to the door of a bedroom on the pretense of introducing her to his grandmother; that instead the defendant put his hand over Miss Ronovitch's mouth, placed a knife at her throat and stated, "I think you know what you are here for."

She further testified that despite her pleadings the defendant ordered her to remove her clothes, whereupon he committed sexual intercourse, achieving penetration. She testified that he committed four separate sex acts that evening, each time achieving penetration, the last act being fellatio; that at 5:30 that morning she was permitted to leave the bedroom and get dressed, whereupon the defendant prepared breakfast for both; that about 7:30 a.m. the defendant's mother arrived home; that she waited until the defendant fell asleep before telling his mother what had transpired asking her to take her

2

home, which was done, the victim arriving at her apartment at approximately 9:00 a.m. She further stated that she consulted one of her neighbors who advised her to call the Columbus Police, which she did.

At the trial defendant insisted on acting as co-counsel with his lawyer Mr. Long. The record indicates that disagreements arose between defendant and his attorney as to what their defense argument should be, and which witnesses should be used. At times defendant acted as his own chief counsel and at other times withdrew as counsel. The trial court indicated that it felt that the constant changing back and forth from being represented by counsel to self-representation was a trial tactic on behalf of the defendant and not being done in good faith; however, the trial court permitted defendant to do so, finally allowing his lawyer to withdraw from the case after a bitter argument just before closing statements. At this time defendant moved the court to declare a mistrial for reason of inadequate assistance of counsel. Throughout the trial defendant and his lawyer moved that the prosecution elect either kidnapping or rape; the prosecution declined to elect and the court did not compel the election.

The defendant took the witness stand and admitted sexual intercourse with the victim the evening in question, but stated he had known her since the previous November; that he and the victim had utilized the scheme of ordering a nurse through the medical pool to get the victim away from her rooming house and her boyfriend; and that the sexual intercourse was entirely voluntary on her part. The defendant called several inmates of the Lucasville Penitentiary, where he had been previously imprisoned, to testify that rape was at the bottom of the social scale and held in deep contempt by the inmates at Lucasville; that knowing the defendant as they did the defendant would therefore never commit rape; and that first degree murder was an acceptable crime.

Prior to trial and following indictment by the grand jury defendant was arraigned on February 27, 1976, at which time he entered a plea of not guilty and attorney David Long was appointed to represent defendant. A plea of not guilty by

reason of insanity was filed on April 14, 1976, at which time
defendant was ordered to be examined by the Southwest
Community Mental Health Center under R. C. 2945.37. At the
same time, defendant filed a handwritten motion to be his own
cocounsel in this case. On April 28, 1976, a report was received
from Southwest Community Mental Health Center declaring
defendant to be competent to stand trial. Following trial on
June 10, 1976, a verdict of guilty was reached on counts of rape
and kidnapping. A psychiatric examination was ordered in
accordance with R. C. 2947.25 on June 11, 1976. A report was
received from Southwest Community Mental Health Center
dated June 29, 1976, stating that defendant was not mentally ill,
mentally retarded, nor a psychopathic offender. The defendant
was sentenced to Chillicothe Correctional Institute.

*State v. Wolfel,* 1977 WL 200274 (Ohio App. 10th Dist. July 12, 1977). The trial court

sentenced petitioner to five to twenty-five years and seven to twenty-five years. *See*

*Exhibits 13-14 to Return of Writ.* Petitioner indicates that the aggregate sentence imposed

was thirteen to sixty-five years incarceration, because he was sentenced to consecutive

terms and on parole at that time. *Petition, at 4.* The trial court later adjudicated petitioner

a sexual predator; however that adjudication was reversed on appeal. *Exhibit 17 to Return*

*of Writ; State v. Wolfel,* 1999 WL 1080152 (Ohio App. 10th Dist. December 2, 1999).[2]

_____

[2] The Ohio Tenth Appellate District reversed petitioner's sexual predator
adjudication in relevant part as follows:

At the sexual predator hearing, the state presented evidence from a former
assistant prosecuting attorney who prosecuted appellant for rape and
kidnapping, who testified as to the circumstances of the crimes and
identified appellant. A deputy clerk of courts identified the indictments,
jury verdict forms and sentencing entries for the rape and kidnapping
charges. The deputy clerk also identified exhibits pertaining to appellant's
1969 conviction for malicious breaking and entering. A post-sentence
investigator from the Ohio Adult Parole Authority testified as to a report

4

he completed in 1995, apparently for a parole hearing. This report included a presentence investigation for appellant's 1969 conviction for breaking and entering. Due to the age of the 1969 pre-sentence report, the court specifically stated it would give the report no consideration. The post-sentence investigator testified that appellant had been placed on parole twice for the breaking and entering charge, and that his parole had been revoked twice. The post-sentence investigation report showed appellant had no prior convictions for a sexually oriented offense. Appellant was on parole at the time the crimes were committed. The victim was twenty-four. Although there was only one victim, she was raped more than once at knife point.

Appellant testified on his own behalf. He stated that the crimes were committed when he was twenty-five and that he is now forty-nine, and he expressed remorse over his crime. He attributed his actions, in part, to the use of alcohol and drugs. Since he has been incarcerated, appellant has completed various programs, including: classes in stress management; anger management; violence prevention; victim awareness; personal dynamics; and substance abuse, and a sex offender counseling program. Appellant stated he has been active in AA for approximately four years. Appellant further stated that he has had no disciplinary infractions since 1988.

William Dallman, the former warden at Lebanon Correctional Institution, testified on appellant's behalf at his parole hearing and also appeared on his behalf at the sexual predator hearing, and stated that, in his opinion, appellant has undergone significant changes during the period of his incarceration.

In finding appellant to be a sexual predator, the trial court listed its factual findings as to the factors set forth in R.C. 2950.09(B)(2), the court further stated that the Ohio Department of Rehabilitation and Correction had conducted a sexual predator screening and, on August 29, 1997, recommended that appellant be adjudicated a sexual predator; however, that screening letter is not part of the record and is not before the court. Therefore, we do not decide what weight or consideration the recommendation is to be given.

On July 12, 1977, the Ohio Tenth District Court of Appeals affirmed petitioner's convictions and sentence. Petitioner apparently never filed an appeal to the Ohio Supreme Court.

However, petitioner challenges in these habeas corpus proceedings the Ohio parole board's subsequent refusal to grant him early release on parole. According to the petition, he has appeared before the parole board and been denied parole twelve times. The record indicates that the parole board denied petitioner release on parole after hearings on November 28, 1983, *Exhibit 17 to Return of Writ*, July 29, 1988, *Exhibit 19 to Return of Writ*, March 21, 1990, *Exhibit 20 to Return of Writ*, September 28, 1992, *Exhibit 21 to Return of Writ*, February 1, 1995, *Exhibit 22 to Return of Writ*, and April 26, 1999, *Exhibit 23 to Return of Writ*. On September 2006, the parole board refused to recommend his release and denied petitioner's request for reconsideration of its decision. *Exhibit 41 to Return of Writ*.

In May 2003, and August 2003, petitioner again requested reconsideration by the parole board of its decision denying him release on parole. He alleged improper retaliation by the parole officials and requested a hearing under *Layne v. Ohio Adult Parole Authority*, 97 Ohio St.3d 456 (2002). *Exhibits 24-26 to Return of Writ*. In September 2003, petitioner wrote to Ohio's governor, complaining that the parole board had improperly refused to

---

There is no doubt appellant's acts were reprehensible and repellant, and that all sexually oriented offenses contain elements of cruelty. Nonetheless, the issue in a sexual predator hearing is whether there is clear and convincing evidence of appellant's likelihood to commit future such offenses.

*State v. Wolfel, supra*, 1999 WL 1080152.

6

grant him release on parole. *Exhibit 28 to Return of Writ.* The parole board advised petitioner in November 2003 that he was not entitled to a rehearing under *Layne, supra. Exhibit 29 to Return of Writ.* In 2004, petitioner again requested the parole board to reconsider its decision denying him release on parole. He alleged that the parole board had failed to comply with the Ohio Administrative Code. *Exhibit 30 to Return of Writ.* In August 2004, petitioner filed a post conviction petition in the state trial court. He asserted that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). *Exhibits 31, 32 to Return of Writ.* It does not appear from the record that the trial court has issued a ruling on petitioner's post conviction petition; however, petitioner does not raise a *Blakely* claim in these proceedings. In April 2005, petitioner requested a parole rehearing under *Ankrom v. Hageman*, 2005 WL 737833 (Ohio App. 10th Dist. March 31, 2005). *Exhibit 35 to Return* of Writ. The parole board advised petitioner he was not entitled to a rehearing under *Ankrom, supra. Exhibit 36 to Return of Writ*.

On September 1, 2006, in a hearing continued from prior dates, the parole board again refused to release petitioner on parole. It appears that petitioner is scheduled to appear before the parole board for parole consideration on September 1, 2009. *Exhibit 41 to Return of Writ*. Petitioner again requested reconsideration of the parole board's decision denying him release on parole by the parole board and the Governor. *Exhibits 43-45 to Return of Writ*. In a letter dated October 9, 2007, the parole board denied his request. *Exhibit 46 to Return of Writ*.

On July 23, 2007, petitioner filed a petition for a writ of habeas corpus with the Ohio

Supreme Court. He asserted that his punishment constituted cruel and unusual punishment and was disproportionate to the offenses charged, in violation of the Eighth Amendment; that he had been denied equal protection because he was being punished more severely than other offenders convicted of similar crimes; that the parole board had improperly refused to release him on parole in retaliation for pursuing action under 42 U.S.C. §1983; that he had been denied counsel in §1983 proceedings; that the parole board had breached an out of court agreement to release him on parole in return for his voluntarily dismissal of an action he had filed under 42 U.S.C. §1983; and that he thereby had improperly been denied relief under 42 U.S.C. §1983. *Exhibits 47, 48 to Return of Writ.* On September 26, 2007, the Ohio Supreme Court *sua sponte* dismissed petitioner's habeas corpus petition. *Exhibit 49 to Return of Writ.*

On October 23, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. ... [T]he Ohio Parole Board, its agents, servants, and employees acting in concert and participation with it, did subject or cause petitioner to be subjected to cruel and unusual punishment, in violation of the Eighth Amendment to the Constitution of the United States.
>
> 2. ... [T]he Ohio Parole Board, its agents, servants, and employees acting in concert and participation with it, did subject or cause petitioner to be subjected to disproportionate punishment, in violation of the Eighth Amendment to the Constitution of the United States.
>
> 3. ... [T]he Ohio Parole Board, its agents, servants, and

employees acting in concert and participation with it, did subject or cause petitioner to be subjected to denial of the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States.

4. ... [T]he Ohio Parole Board, its agents, servants and employees acting in concert and participation with it, did subject or cause petitioner to be subjected to malicious retaliation and punishment for constitutionally protected activities, in violation of the First and Fourteenth Amendments to the Constitution of the United States.

5. ... [T]he Ohio Parole Board, its agents, servants, and employees acting in concert and participation with it, did subject or cause petitioner to be subjected to the denial of the representation of counsel, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States.

6. ...[T]he Ohio Parole Board, its agents, servants, and employees acting in concert and participation with it, did subject or cause petitioner to be subjected to the denial of relief in a 42 U.S.C. §1983 action in a Federal Court, in violation of the First and Fourteenth Amendments to the Constitution of the United States.

7. ... [T]he Ohio Parole Board, its agents, servants, and employees acting in concert and participation with it, did subject or cause petitioner to be subjected to the loss of the terms, conditions, and benefits of an out-of-court settlement between petitioner and the Ohio Parole Board, as brokered by Assistant Attorney General Joseph M. Mancini, in violation of the Fourteenth Amendment to the Constitution of the United States.

It is the position of the respondent that petitioner's claims are time-barred and without merit.

## II. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The United States Court of Appeals for the Sixth Circuit has stated that, in the context of a challenge to a parole denial, the one-year statute of limitations begins when under 28 U.S.C. §2244(d)(1)(D), petitioner could have discovered the factual predicate of

his claims through the exercise of due diligence. *Alexander v. Birkett*, 228 Fed.Appx. 534, unpublished, 2007 WL 1063270 (6th Cir. April 9, 2007)(statute of limitations on claim that parole board's denial of release on parole violated the Ex Post Facto Clause began to run when petitioner could have discovered through due diligence the change in policy regarding parole eligibility for prisoners sentenced to life terms); *see also Ali v. Tennessee Board of Pardon and Parolees*, 431 F.3d 896, 898 (6th Cir. 2005)(challenge to the parole board's denial of release on parole timely where filed within one year of decision denying release on parole); *Guerrero v. Palmer*, 2006 WL 2077581 (W.D. Michigan July 24, 2006)(statute of limitations begins to run on challenges to parole board's repeated denials of release on parole on the date that petitioner could have discovered with due diligence changes in state law and parole policy regarding parole eligibility); *Bachman v. Bagley*, 487 F.3d 979, 984-85 (6th Cir. 2007), stating that "Sixth Circuit precedent dictates... that courts determine the beginning of the one-year statute of limitations period based on the content of the prisoner's claim," and noting:

> the Sixth Circuit has permitted prisoners to challenge a state parole board's administrative denial of parole in a habeas petition filed within one year of the parole denial becoming final, *Ali v. Tennessee Board of Pardon & Paroles*, 431 F.3d 896, 898 (6th Cir.2005), and to challenge the revocation of parole within one year of the revocation decision becoming final, *Bogan v. Hufman*, No. 98-4425, 2000 WL 1800572, **1-2, 2000 U.S.App. LEXIS 31039, at *3-4 (6th Cir. Nov. 30, 2000).

*Id.*

Here, petitioner alleges that he has "a long history of litigation with [the] Ohio

prison and parole officials spanning... from 1983 to 1993," *Petition*, at 6, resulting in the parole board's alleged retaliatory refusal to release him on parole from 1983 through 2006. *Id.*, at 6-11.   He contends that sometime in 1993, respondents improperly induced him to drop his then-pending action under 42 U.S.C. §1983, promising in return that he would be released on parole at his next parole hearing in 1995.   *Id.*, at 11-12.   Plainly, the factual predicate for such claims was apparent  at the latest in 1995 when the parole board refused to release petitioner on parole, and in any event, prior to April 24, 1996, the effective date of the AEDPA.   Therefore, the statute of limitations expired one year later, on April 24, 1997. *See Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999)(citations omitted), *reversed on other grounds by Cowherd v. Million*, 380 F.3d 909 (6th Cir. 2004).   Still, petitioner waited years later, until July 2007, to pursue a state habeas corpus petition, and until October 2007 to file the instant habeas corpus petition.

Petitioner also asserts that he has been denied equal protection, subjected to disproportionate punishment compared to other defendants convicted of similar offenses, and that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment because Ohio's 1996 Senate Bill 2, "revamped Ohio law making the same conduct petitioner is serving a 65 year maximum sentence for punishable by a maximum sentence of 28 years in prison" *Traverse,* at 7, and requires his early release.   He further contends that Ohio Administrative Code 5120:1-1-07(B)(8) mandates that Ohio's 1996 sentencing provisions be applied retroactively such that the parole board should have released him on parole after he served 28 years incarceration.   *Id.*, at 8-9. Petitioner also

asserts that, in part due to the 1996 sentencing law changes in Ohio, the parole board unconstitutionally denied him release him on parole because other inmates, some who have been convicted of more serious crimes, have been granted release on parole but he has not. Again, the factual predicate for all of the foregoing claims was known to petitioner or discoverable by him with due diligence long before 2007 when he first pursued state or federal habeas corpus relief, and long after the one-year statute of limitations had expired. Further, petitioner has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002). Therefore, this Court concludes that the one-year statute of limitations under 28 U.S.C. 2244(d) bars all of petitioner's habeas corpus claims related to the parole board's alleged improper denial of release on parole from 1983 to 2005.

Petitioner, however, contends that dismissal of his claims as time-barred constitutes a violation of the Suspension Clause. *See Traverse*, at 3. This argument is not persuasive.

> Under the Suspension Clause to the United States Constitution, Congress cannot abolish habeas corpus except in situations of rebellion or invasion. U.S. CONST. art. I, § 9, cl. 2. The United States Supreme Court has found that habeas legislation violates the Suspension Clause only when it unreasonably "renders the habeas remedy 'inadequate or ineffective' to test the legality of detention ." *Miller v. Marr,* 141 F.3d 976, 977 (10th Cir.1998) (quoting *Swain v. Pressley,* 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977), and *United States v. Hayman,* 342 U.S. 205, 223, 72 S.Ct. 263, 96 L.Ed. 232 (1952)). Because the AEDPA's statute of limitations leaves habeas petitioners with a reasonable opportunity to have their claims heard on the

> merits, the limitations period does not render the habeas
> remedy "inadequate or ineffective to test the legality of
> detention." *See Lucidore v. New York State Div. of Parole,* 209 F.3d
> 107, 113 (2nd Cir.2000); *Molo v. Johnson,* 207 F.3d 773, 775 (5th
> Cir.2000); Miller, 141 F.3d at 978; *Rhodes v. Senkowski,* 82
> F.Supp.2d 160, 174 (S.D.N.Y.2000); *Biladeau v. Angelone,* 39
> F.Supp.2d 652, 657-58 (E.D.Va.1999). The AEDPA's statute of
> limitations does not unconstitutionally suspend the writ of
> habeas corpus.

*Birch v. Sherman,* unpublished, 2002 WL 1880398 (E.D. Michigan July 31, 2002); *see also*

*Thomas v. Straub,* 10 F.Supp.2d 834, 836 (E.D. Michigan 1998).

Petitioner also alleges that his will was overborne, that he has been denied access

to the courts and that he was unable earlier to raise his claims, and that his claims therefore

are timely under 28 U.S.C. §2244(d)(1)(B). *Traverse,* at 2, 5-6. According to petitioner, an

unspecified state impediment prevented him from raising his claims until July 2007, when

he filed his state habeas corpus petition. *Id.,* at 5. However, nothing in the record supports

petitioner's allegation that any state impediment prevented him from earlier raising his

claims or from filing this federal habeas corpus petition.

Petitioner next contends that this Court should apply the "continuing violation"

doctrine to waive the statute of limitations in this case, *id.,* at 4-5, because each time the

parole board denied him release on parole it did so on the same unconstitutional grounds.

*See Traverse.* Again, this argument is not persuasive.

> The continuing violation doctrine may operate to toll a statute
> of limitations in what the Sixth Circuit previously
> characterized as two categories of "narrowly limited

> exceptions," *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991)
> (quoting *E.E.O.C. v. Penton Indus. Pub. Co.,* 851 F.2d 835, 837-38
> (6th Cir.1988)), i.e., "where the plaintiff can show prior
> discriminatory activity that continues into the present, as
> opposed to prior discriminatory activity whose effects continue
> into the present, and where the plaintiff can show a
> longstanding and demonstrable policy of discrimination." *Bell
> v. Ohio State Univ.,* 351 F.3d 240, 247 (6th Cir.2003) (internal
> citations and quotations omitted).

*Claybrooks v. Primus Automotive Financial Services, Inc.*, 363 F.Supp.2d 969, 950 (M.D. Tenn. January 18, 2005). "Courts have been extremely reluctant to apply this doctrine outside the context of Title VII." *LRL Props. v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1105 n. 3 (6th Cir.1995). *See also National Parks Conservation Association, Inc. v. Tennessee Valley Authority*, 480 F.3d 410, 416 (6th Cir. 2007). Petitioner has not referred to, and this Court is not aware of, any cases applying the continuing violation doctrine to permit consideration of otherwise time-barred claims in federal habeas corpus proceedings. At least one court to consider the issue has refused to apply the continuing violation doctrine in §2254 proceedings to repeated denials of parole based upon the same allegedly improper grounds, such as the scenario in this case. *See McAleese v. Brennan,* 483 F.3d 206, 217-19 (3rd Cir. 2007*); see also Lovett v. Ray,* 327 F.3d 1181, 1182 (11th Cir. 2003)(rejecting continuing violation doctrine in §1983 action as applied to parole board's repeated denials of parole); *see also In re Marsch*, 209 Fed.Appx. 481, 483-84, unpublished, 2006 WL 3780362 (6th Cir. December 20, 2006)(affirming District Court's transfer of §2254 petition to the United States Court of Appeals for the Sixth Circuit as successive where petitioner filed habeas corpus

petition challenging parole board's denial of parole based on same grounds raised in prior habeas corpus petition); *Smith v. Grubbs,* 42 Fed.Appx. 370, 372, unpublished, 2002 WL 3780362 (10th Cir. July 11, 2002)(concluding that "successive denials of parole did not involve separate factual predicates" warranting separate start dates for calculating the running of statute of limitations in §2254 proceedings).

In sum, claims four through seven, in which petitioner asserts that he improperly was denied counsel in an action he filed under 42 U.S.C. §1983, and that the parole board improperly denied him relief in §1983 proceedings and breached an out of court agreement to grant him parole in 1995 in return for dismissal of such action all plainly are time barred. Likewise, claims one through three are time-barred to the extent such claims raise issues challenging the parole board's denial of release on parole prior to September 2006.

Respondent contends that petitioner's allegations in claims one through three challenging the parole board's refusal to release him on parole in September 2006 likewise are time-barred, because petitioner raises no new factual predicate for such claims not applicable to the parole board's earlier denials of release on parole. *See Response to Petitioner's Motions Dated March 5, 2008*, Doc. No. 20. Notably,

> courts have applied the bar on successive petitions when prisoners challenge different parole decisions on grounds already determined to be without merit in a prior habeas action. *See, e.g., Benchoff v. Colleran,* 404 F.3d 812, 817-18 (3rd Cir.2005) (petition challenging third denial of parole was second or successive; claim could have been raised after petitioner received one of the "identically phrased denials of parole" forming factual basis for petition); *Ware v. Carey,* 204

Fed. Appx. 657, 658 (9th Cir.2006) (per curiam) (unpublished) (petition is successive where "none of the claims ... is unique to [the latest parole proceeding] or reflects intervening changes in the law," and claims were addressed on merits in earlier petition) (citations omitted). In these limited circumstances, the successive denials of parole are not new grounds for relief because every material fact was available at the time the earlier petition was filed. Courts have also applied similar reasoning to dismiss second petitions bringing new claims, and to find claims time-barred. *See In re Marsch,* 209 Fed. Appx. 481, 483-84 (6th Cir.2006) (unpublished) (petition challenging 2004 denial of parole because the board relied on allegedly inaccurate version of facts surrounding crime was successive; petitioner did not show that parole board relied on different information in parole denials in 1992 or 2000, and thus factual predicate of claim was known when he filed first habeas petition challenging conviction in 2000); *Smith v. Grubbs,* 42 Fed. Appx. 370, 371 (10th Cir.2002) (unpublished) (rejecting argument that each of four denials of parole was a new factual predicate for purposes of AEDPA's limitations period where petitioner alleged same ground for relief in connection with each); *Wolfe v. Diguglielmo,* Civ. Action No. 06-5261, 2008 WL 544645, at *4 n. 6 (E.D.Pa. Feb.25, 2008) (unpublished) (where petitioner was denied parole four times on same grounds, and brought same legal challenges to each denial, successive denials were not "necessary factual predicate" to petitioner's claims) (citing *Benchoff,* 404 F.3d at 818).

The Fifth Circuit has also recognized that petitions challenging different parole decisions can be "second or successive." In the pre-AEDPA case *United States v. Tubwell,* 37 F.3d 175 (5th Cir.1994), the Fifth Circuit affirmed the dismissal of a petitioner's first challenge to a second parole board decision as successive. *Id.* at 178. The petitions attacked different parole proceedings; however, in spite of this "additional factual development, ... the legal issue remain[ed] the same." *Id.* at 177. The petitioner thus "failed to raise a new ground for *habeas* relief, thereby constituting an abuse of the writ under § 2244(a)." *Id.* (italics in original). More recently, the Northern District of Texas has applied the bar against successive

> petitions to sentence administration claims that were, for all
> practical purposes, adjudicated in connection with a challenge
> to an earlier proceeding. *See, e.g., Wooderts v. Warden FCI
> Seagoville,* No. 3:07-CV-0335, 2008 WL 245286, at *2 (N.D.Tex.
> Jan. 29, 2008) (unpublished) (dismissing successive petition
> that presented same argument and was, "for all purposes,
> identical to the claim addressed [in an earlier federal
> petition]"); *Ortloff v. Fleming,* No. Civ.A. 4:02-CV-749, 2003 WL
> 21246098, at *2 (N.D.Tex. Apr.24, 2003) (unpublished) (where
> petitioner brought same legal challenges to two successive
> denials of parole, claims were successive because they did not
> assert "direct and specific challenges to actions taken by the
> parole commission relative to [the second denial]"); *Ortloff,*
> 2003 WL 21246098 at *8 ("although [petitioner] claims to be
> challenging the Commission's 2001 decision ... in actuality he
> is attempting to raise the same grounds for relief that he raised
> in his prior § 2241").

*Petrus v. Quarterman*, 2008 WL 2783513 (S.D. Texas July 16, 2008).  Applying this rationale,

all of petitioner's claims may be time-barred under 28 U.S.C. 2244(d).

In any event, for the reasons that follow, these claims fail to provide any basis for

federal habeas corpus relief.

.                              **CLAIM ONE**

In claim one, petitioner asserts that the parole board's refusal to release him on

parole in 2006 constitutes cruel and unusual punishment in violation of the Eighth

Amendment.  In support of this argument, petitioner refers to *Humphrey v. Wilson*, 652

S.E.2d 501, 510 (Georgia 2007), wherein the Supreme Court of Georgia affirmed state

habeas corpus relief, concluding that the defendant's sentence of ten years on aggravated

child molestation without possibility of early release on probation or parole, was grossly

disproportionate to the offense and violated the Eighth Amendment where the defendant, who was seventeen years old at the time of the offense, committed an act of consensual oral sex with a fifteen year old. After the defendant had been convicted and sentenced, the Georgia legislature reduced the crime for which he was charged to a misdemeanor offense. Such circumstances are not analogous to the scenario in this case. Further, the United States Court of Appeals for the Sixth Circuit has concluded that a parole board's refusal to grant a prisoner early release on parole does not constitute cruel and unusual punishment: "The Eighth Amendment prohibits conduct that involves the unnecessary and wanton infliction of pain. *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir.1987). The denial of parole clearly does not fall under this umbrella." *Carnes v. Engler,* 76 Fed. Appx. 79 (6th Cir.2003) (unpublished).

Claim one is without merit.

## CLAIMS TWO AND THREE

In claims two and three, petitioner asserts that, in September 2006, the parole board subjected him to disproportionate punishment and denied him equal protection by treating him differently than other offenders convicted of similar or more serious crimes who are being released on parole, particularly after passage of Ohio's Senate Bill 2. According to petitioner, had he been convicted after Senate Bill 2, his sentence would have been from 96 to 336 months. *Traverse*, at 3. He complains that the parole board nonetheless denied him release after he had served 379 months in September 2006, and states that he will have

served 33 years and 7 months before he is again considered for parole. *Id*. Again, this Court is not persuaded by petitioner's argument.

The parole board continued petitioner's September 2006 hearing from prior dates to obtain additional information to determine whether to recommend him for release, *i.e.*, a mental health treatment summary, conduct reports, and "CON." *See Exhibits 37-39 to Return of Writ*. On May 11, 2006, the parole board continued petitioner's hearing to September 2006, noting that he had a "poor supervision history," "problematic inst[itutional] adjustment," and "no real insight into past behavior." *Exhibit 39 to Return of Writ*. The board noted that it had not granted parole in 1999 because petitioner posed a "more serious parole risk due to repeated acts of violence and not addressing his sex offending behavior." *Id*. The board then denied release in September 2006, apparently after obtaining the mental health treatment summary and other relevant information sought which documents do not appear to be a part of the record before this Court, stating:

> All release factors in AR 5120 1-1-07 were considered at today's hearing. Offender has a poor criminal history that includes a felony commitment, his instant offense involved the use of a knife to facilitate the kidnapping and rape of a home health nurse, and he has been placed in disciplinary control for the institutional misconducted... After weighing the relevant factors including the aggregate court sentence, Central Office Board Review votes to continue the offender to promote the general welfare of the community and to further the interests of justice.

*Exhibit 41 to Return of Writ*. The report noted six prior significant disciplinary infractions. *See id.*

To the extent that petitioner asserts a violation of state law, that claim is not appropriate for federal habeas corpus review. A federal court may grant habeas relief to a state inmate under 28 U.S.C. §2254 only upon a finding "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ will not issue merely on the basis of a perceived error of state law. *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

Additionally, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7 (1979). The State of Ohio has not created in its inmates a constitutionally protected liberty interest in release on parole. *Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Auth.,* 929 F.2d 233, 235 (6th Cir. 1991). *See* O.R .C. §2967.03 [the Ohio Adult Parole Authority "may ... grant a parole to any prisoner ... if in its judgment there is reasonable ground to believe that ... paroling the prisoner would further the interest of justice and be consistent with the welfare and security of society."] Even the revocation of a conditional grant of parole raises no constitutional claims at any time prior to the inmate's actual release. *Jago v. Van Curen,* 454 U.S. 14 at 20-21 (1981). Because petitioner had no constitutionally protected interest in release on parole, the parole board did not violate due process by refusing to release him early on parole.

Petitioner's allegation that the parole board unconstitutionally denied him release in view of Ohio's passage of Senate Bill 2 likewise fails.

Am. S.B. 2, popularly known in Ohio as the "Truth in

Sentencing Law," *inter alia* eliminated indefinite imprisonment sentences: "For a felony of the third degree, the prison term shall be one, two, three, four, or five years." Ohio Rev.Code §2929.14(A)(3) ("For Offenses Committed ON OR AFTER July 1, 1996"). Additionally, Am. S.B. 2 eliminated "good time" credits against an inmate's minimum prison sentence which he or she must discharge prior to attaining eligibility for parole consideration. *Compare* former Ohio Rev.Code §2967.193 ("For Offenses Committed PRIOR TO July 1, 1996") *with* the current version of § 2967.193 ("For Offenses Committed ON OR AFTER July 1, 1996"). The Ohio legislature specified that Am. S.B. 2 would *not apply retroactively* to convicts... who were sentenced prior to July 1, 1996. *See* Am. S.B. 2 ("The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date [.]") ( *quoted in State ex rel. Lemmon v. Ohio Adult Parole Authority,* 78 Ohio St.3d 186, 677 N.E.2d 347, 349 (Ohio 1997) (*per curiam*)).

*Linger v. Akram*, 23 Fed.Appx. 248, 251 n.3, unpublished, 2001 WL 1136040 (6th Cir.

September 19, 2001).

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prove an equal protection claim, a petitioner must demonstrate "intentional and arbitrary discrimination" by the state. In other words, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

***

"[T]he Sixth Circuit has held that a prisoner cannot support a violation of his equal protection rights simply by showing that other inmates were treated differently." *See Newell v. Brown,* 981 F.2d 880, 87 (6th Cir.1992). Rather, he must show that he was victimized because of some suspect classification. *Id.; see*

22

*also Lovely v. Hughes,* No. 96-5536, 1997 WL 112386, at * 1 (6th Cir. Mar. 12, 1997) (affirming district court's dismissal of §1983 claim alleging that denial of plaintiff's parole violated Fourteenth Amendment right of equal protection because similarly-situated prisoners were granted parole).

*Johnson v. Motley*, 2008 WL 2758444 (E.D. Kentucky July 14, 2008).  Petitioner has failed to meet this standard here.  "[I]nmates are not a suspect class for Equal Protection Clause purposes."  *Michael v. Ghee,* 411 F.Supp.2d 813, 818 (N.D. Ohio February 1, 2006), citing *Jackson v. Jamrog*, 411 F.3d 615, 618-19 (6th Cir. 2005).  In *Linger v. Akram, supra*, the United States Court of Appeals for the Sixth Circuit, in an unpublished decision, affirmed the District Court's denial of claims of denial of equal protection based on the parole board's refusal to grant parole after passage of Ohio's Senate Bill 2, stating:

> [N]o equal protection infraction arose from the petitioner's allegedly "unequal" imprisonment sentence, when compared to the more lenient penalties sustained by individuals sentenced under the July 1, 1996 statute, because the new law's non-retroactivity to persons sentenced prior to July 1, 1996 was rationally related to a legitimate state interest, namely "judicial economy" ( citing, *inter alia, City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985))[.]

*Id.*  The United States District Court for the Southern District of Ohio has similarly denied relief in proceedings under 42 U.S.C. §1983 raising a similar claim:

> Plaintiffs argue the State violates the Equal Protection Clause because it distinguishes between old and new law inmates by, *inter alia,* giving new law inmates fixed sentences and old law inmates indeterminate sentences. ...
>
> Old law inmates do not have a fundamental right to release at the end of their minimum sentence. The U.S. Supreme Court

has held there "is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz,* 442 U.S. at 6, 99 S.Ct. 2100; *Jackson v. Jamrog,* 411 F.3d 615, 618-19 (6th Cir.2005). ... If state actions do not affect a suspect class or implicate a fundamental right, rational basis review applies. *Id.* Because the plaintiffs are not members of a suspect class and, as discussed above, parole does not implicate a fundamental right, the rational basis standard applies. *Greenholtz,* 442 U.S. at 6, 99 S.Ct. 2100; *Jackson,* 411 F.3d at 618-19.

Under rational basis review, courts will uphold governmental policy if there is a rational relationship between the state action and some legitimate government purpose. *Midkiff v. Adams County Reg'l Water Dist.,* 409 F.3d 758, 770 (6th Cir.2005). Rational basis review is deferential: "the governmental policy at issue will be afforded a strong presumption of validity [...]" *Id.* "[U]nder rational basis review, a purported rational basis may be based on rational speculation unsupported by evidence or empirical data and need not have a foundation in the record." *Id.* (quotations and citations omitted). This standard places a "severe burden" on plaintiffs such that they "must negate all possible rational justifications" of the state action. *Id.* (quotations and citations omitted).

Here, [a] rational bas[is] exist[s] for... the State's actions....

***

[T]here are several rational reasons that could have motivated the Ohio's legislature to require old law inmates to continue to serve their indeterminate sentences subject to Parole Board determinations. Among these are a desire to: 1) avoid passing retroactive legislation and altering the sentences of inmates already incarcerated; 2) give Ohio's old law inmates the incentive to obey prison regulations by keeping the parole system in place, which rewarded them for good behavior; and 3) acknowledge the seriousness of the convicted offenses. ...

*Id.,* at 818.

Therefore, for all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** and that petitioner's motion for summary judgment, Doc. No. 18, be **DENIED**. His request for an evidentiary hearing, Doc. No. 19, is **DENIED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir.1987); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge